Smith, J.
The first question which we consider in this case is, whether the charges which were presented to Mayor Tafel,on September 3,1897, against the defendant, Sullivan,who was-then one'of the members of the board of supervisors of the city of Cincinnati, purporting to charge said Sullivan with neglect of duty as a member of said board, and of which charge notice was given to said defendant by serving him with a copy thereof and notifying .him that said charges would be for trial and hearing,on September 7,1897,at the office of the mayor, embodied facte which, in judgment of. law, constituted, if true, neglect of duty on the part of the defendant as a member of the said board. If they did state facts, which, if true, constituted neglect of duty, we *334 think the decision of the supreme court in State v. Hawkins, 44 Ohio St., 98, is authority for holding that under sec. 2690m,Revised Statutes,which confers upon the mayor the right and jurisdiction to remove any member of said board for neglect of duty or- misconduct in office, he might proceed to hear and determine the truth of the charges, giving to the person charged an opportunity to defend himself therefrom, and if in the judgment of the mayor he is found guilty,that he might properly be removed.
But it is objected and insisted by the counsel for the defendant, that there never was any valid or legal charges presented against him; that said charges so presented against him did not state .facts that in judgment of law constituted neglect of duty, and therefore, that the mayor had no authority to proceed to hear or determine the truth of the allegations made, or render any judgment thereon: and when the case came before, the mayor for hearing, the defendant, as alleged in the answer we are considering, filed an application and motion in writing, alleging the insufficiency of such charges, both as to substance and form, and objecting to a trial and hearing thereon, and asking that they be dismissed, (setting out a copy of the motion riled by him). The answer further avers, that this motion was overruled by the mayor who then ordered the trial to proceed, and that thereupon defendant filed his answer denying the truth of the facts alleged in each of the charges,and that thereupon the mayor, against the objection of the defendant, entered upon the trial and hearing of said charges,- and that not a word of evidence tending to sustain the truth of the facts alleged in said charges, or either of them, was adduced or heard by the mayor; and that no statement or information of any personal or official knowledge of the mayor of any kind, tending to substantiate or prove the facts alleged jin said charges or either of them, was made or communicated tojthe defendaht. The answer further avers, *335 that on September 22,1897, the mayor made his certain order and caused it to be served on the defendant, in which it is stated, “I find from the evidence and also from the facts within my personal knowledge, that the said John J. Sullivan has been guilty of neglect of duty in his official capacity as a member of the said board of supervisors,’’and proceeded to remove him from his said office. All of which defendant avers was contrary to the facts and the law of the state.
For the proper determination of the principal questions under consideration, viz: whether the charges were sufficient, if true, to put the defendant on his defense, or to justify any action on the part of the mayor,such as was had,it.is essential to have before us a copy of such charges as they are set out in the answer of the defendant. — They are as follows:
“Hon. GustaveTafel,
“Mayor of the Oity of Cincinnati.
“Sir: — 'The undersigned citizens and tax-payers of Cincinnati, hereby charge John J. Sullivan with neglect of duty as a member of the board of supervisors of Cincinnati, in this, to-wit:
“B. Said John J. Sullivan knew that the capital stock of the Cincinnati Street Railway Company was about $15,625,000.00, and that its market value was about $19,000,000.00, and knew, or should have known, that the tangible property of said company,real and personal, owned by said company in the city of Cincinnati, and subject to taxation at the time the valuation of property for the current year was tobe fixed, was.many millions of dollars, to-wit: about $10,000,000.00; nevertheless,about August,1897, he did wilfully, wrongfully, and to the great prejuduce and loss of other tax-payers of the city of Cincinnati, consent to, and approve as a member of said board of supervisors, a valuation of said personal property of said Cincinnati Street Railway Co., for purposes of taxation for the current year, at the sum of $835,230.00, and realty at about $350,000; that said valuation was a gross wrong upon other tax-payers of the city of Cincinnati, and that said John J. Sullivan knew the same to be grossly inadequate, as alleged, when *336 he consented to and approved the same, and that by the exercise of ordinary care, as a member of said board,he would have known what the undersigned aver is a fact, that the true value of said taxable property for purposes of taxation on the county duplicate, was many millions of dollars, to-wit, not less than about $10,000,000.00, and that although other property of citizens subject to taxation was uniformly valued by said John J. Sullivan for taxation, at about 65 per cent, of its selling value, the property of said Cincinnati Street Railway Company, was wilfully and with intent to prefer, and be partial to and favor it, fixed at a valuation of about 7 per cent, of its selling value.
“O. Said John J. Sullivan knew that the capital stock of the Cincinnati "Gas Light & Coke Co., was about $8,500,000.00, and that its market value was over $17,000,000.00, and knew, or should have known, that the tangible property, real and personal, owned by said company in the city of Cincinnati, and subject to taxation, was at the time of valuation of property for the current year, many millions of dollars,to-wit, about $10,000,000.00; nevertheless he did, about August, 1897, wrongfully, wilfully, and to the great prejudice of, and in gross wrong of other tax-payers of the city of Cincinnati, consent to, and approve as a member of said board of supervisors, a valuation of said property for purposes of taxation for the current year, at the sum of $2,145,408.00, which was $354,392,00 less than the valuation of the same property for the preceding year; that said valuation was a gross wrong upon other tax-payers of the city of Cincinnati, and that said John J. Sullivan knew the same to be grossly inadequate when he consented to, and approved the same, and xhat by the exercise of ordinary care, said members of said board would have known what the undersigned aver is a fact, that the true taxable valuation of said property on the county duplicate was many millions of dollars, to-wit, not less than about $10,000,000.00.
“Wherefore, the undersigned request your Honor to give notice of these charges, to fix a day for hearing the same, ' and to take such further acrion as may be authorized by law.
‘ ‘ Respectfully, ’ ’ etc.
*337 The.foregoing purported to be signed by the tax-payers’ association of Hamilton county, by Jos. Hippart, Pres.,, and Fred Fieke, Sec’y., I. B. Marsman and about sixty-four other persons.
It will be seen from a reading of these charges and specifications, that they are of a very grave character. If it be true that Mr. Sullivan knew that the capital stock of the Street Railway Company, was about $15,625,000’00, and that its market value was about $19,000,000.00, and knew, or should have known, that the tangible property of said company, real and personal, owned by said company in the city of Cincinnati and- subject to taxation at the time the valuation of property for the current year was to be fixed, was many millions of dollars, to-wit, about $10,000,000.00, and that he, when called upon as a member of the board of supervisors of the city, to act upon the correctness of the returns of corporations and individuals for the current year, and equalize the same and, so far as lay in his. power, correct any untrue or false returns, kneWj as is averred in said answer, he did, that the return of said Railway Company of its personal property and real estate for taxation, viz,, the personalty at $835,230.00,'and the realty at about $350,000, was altogether too small, and thus a gross wrong upon the other tax-payers of the city, and when by the exercise of ordinary care as a member of the board, he would have known (what the charge asserted as a fact) that the true value of said taxable property for purposes of taxation on the county duplicate, was not less than $10,000,000.00, and that although other property of citizens was uniformly valued by him for taxation at about 65 per cent, of its selling value, the property of said Railway Company was by said Sullivan, wilfully, and with intent to prefer and be partial to and favor it, fixed at a valuation of about 7 per cent, of its selling value, and he did any act in the pretended discharge of his duty to carry said purpose into *338 effect, or omitted, with the intent charged, to do anything legally in his power to do, to prevent such injustice, and wrong, there could hardly seem room for any difference of opinion as to such conduct, but everyone would say that this was gross misconduct in office, or gross neglect of duty, and that removal from office would not be a harsh penalty therefor'.
But the question remains, whether any such neglect of duty, (for that is the charge), is alleged against the defendant. While knowledge of the facts as to the under-valuation of this property by the company is properly alleged on the part of Sullivan, and his wrongful purpose and intention is charged, what is the act done, or the duty omitted, "which is charged against him, as constituting the neglect of duty? It is, as we understand, that with such knowledge and intent, “he did about August, 1893, wrongfully, wilfully, and to the great prejudice and loss of other taxpayers of the city of Cincinnati, consent to and approve, as a member of said board of supervisors, a valuation of said personal property of said Cincinnati Street Railway Company, for purposes of taxation for the current year, at the sum of $835,230.00, and realty at about $350,000,” which ha knew to be grossly inadequate, and when by the exercise of ordinary care as a member of the board, he would have known the real value thereof to be $10,000,000.00, which was averred to fee the real value.
Now, if a consent or approval of such a return by the board of supervisors, and of the valuation made therein, was a duty imposed upon it, or was necessary or essential to the placing of the same upon the duplicate for taxation, and the members of the board, or one of them, with the knowledge averred to have existed on the part of this defendant, and with the purpose and intent specified, it would seem clear to me. that this charge as presented would be a good and valid charge under the authority before cited.' A *339 brief examination of the statutes as to the making returns of the kind mentioned in these charges, and of the duties of the county auditor t (in this city), the board of supervisors performing the duties of an annual board of equalization, is therefore necessary.
Under the provisions of sec. 2744, Revised Statutes, the president,secretary and principal accounting officer of a corporation like the Street Railway Company,or the Gas Company, shall list for taxation, verified by the oath of the person so listing, all the personal property, (which shall be held to include all such real estate as is necessary to the daily operations of the company), moneys and credits of such company or corporation within the state, at the actual value in manner following: Then it is pointed out that such return is to be made to the auditor,of the several counties in which the property is situate, and the amount in each township, city, village, etc., to be apportioned to each. This return is to be made in May of each year. Under secs. 2781, and post, the county auditor in certain cases is authorized to correct returns made for the current year, or for five years previous to the examination. By sec. 2806, it is made the duty of the county auditor to lay before the proper board of equalization, the returns made to the assessor by individuals, each year, and of the returns made to him by corporations under sec. 2744. Under sec. 2690m, the board of supervisors in this county, takes the place of the annual board of equalization in other counties, and such returns made to the auditor are laid before ^aid board of supervisors, which performs the duties imposed by sec. 2807, on the boards of equalization.
This section provides among other things, that
“Said board shall hear complaints and equalize the assessments of all personal property,moneys and credits, new entries and new structures returned for the current year by the township assessors and county auditors: and they shall have *340 power to add to, or deduct from the valuation of personal property,or moneys or credits of any person returned by the assessor or county auditor,or which may have been omitted by them, or to add other items upon such evidence, as shall be satisfactory to the said board, whether said return be made upon oath of such person, or upon the valuation of the .assessor or county auditor; but when any addition shall be ordered to be made to any list returned under oath, a statement of the facts upon which such addition was made shall be entered upon the journal of the boards. Provided that no such addition shall he made to such list returned under oath without the board having first given reasonable notice to the person or persons (if their residence be within the county), whose personal property is sought to be added to, or the valuation increased, to appear before such board at a time and place to be fixed by said board, and show cause why such addition should not be made, or why such valuation should not be increased.”
Under this section it seems to us, that whenever the board has good reason to believe that any return made by a person or corporation, so placed before it for review or equalization, is incorrect, and that the valuation of the personal property therein reported, is greatly below its real value, or that items of personal property, as defined by sec. 2744, which should have been included therein, have been altogether omitted from such return, that it is the bounden duty of such board to enter upon the examination of these questions and exercise the powers which the law confers upon it, even if no complaint be made by a person or persons not members of the board. This would seem to be one of the purposes for which the board was established, and the failure to discharge this duty, or in good faith to discharge the other duties incumbent upon them with respect to such returns, especially if it appeared that such failure to act was with personal knowledge of the falsity of such returns, and with the intent to suffer and permit the person or corporation making such return, to escape its fair and proper share *341 of the burdens of taxation, would be misconduct in office and neglect of duty.
And we are further of the opinion, that it is the duty of each member of the board who has reason to believe, or does believe, that such returns are clearly wrong, to use his honest efforts with the board of which he is a member, to correct the wrong, and if with the purpose and intent averred in this case, he does not do so, he neglects the duty imposed upon him. If he does in good faith do what he can to correct what he believes to be wrong, and the evidence shows that he was mistaken, or he is overruled or voted down by his associates, he is free from blame.
It seems to us clear that, in terms at least, no charge is made against this defendant other than this- — 'that he consented to and allowed this return or valuation of the Company for the purposes of taxation for the current year. So far as we can see, there is no provision in the statute which makes the consent or approval of the board, or any one of its members, at all necessary or' essential for the placing the amount returned upon the duplicate for taxation. Unless it is duly and legally altered or changed by the board when the returns are laid before it by the auditor, it goes upon the duplicate at the valuation returned by the corporation as a matter of course. .The charge against the defendant, is that he was guilty of an affirmative act, and that an act, which the statute did not require the board,or him as a member of it, to perform, and which, if performed, would have been perfectly useless and without any legal effect. How can it be that the doing of such an act is a neglect of dutj ?
If the charges had been that with knowledge of the incorrectness of those returns in the particulars stated, the defendant, with the intent charged, had wilfully and intentionally failed to use any of the powers conferred upon him by the statute, as for instance, that he had failed to call the at *342 tention of the board thereto, and to use his efforts to have the correctness thereof investigated by it, or,if necessary, to make complaint himself in regard thereto, or if on such investigation, (if entered upon), he knowingly and wilfully failed to discharge any duty imposed upon him by the law, a very different case would be presented, and in such case, in our judgment, it could not be correctly held, that if they were shown to be true, it would not amount to misconduct in office, or neglect of duty.
But as now presented, we are of the opinion that the charge made was fatally defective as not stating facts which show, (if they are true), that the defendant was guilty of neglect of duty — and therefore, that his removal from office by the mayor on such charges, was unauthorized.
As to the other point presented by counsel for the defendant, that the removal was not a valid act by the mayor, for the reason that at the hearing and trial of the defendant, there was no evidence tending to sustain the truth of the facts alleged in said charges, or either of them, and that no statement or information of any personal or official knowledge of the mayor of any kind, tending to substantiate or prove the facts alleged in said answer, was made or communicated to the defendant, and yet, that the mayor found him guilty, we have this to say. That in our judgment the holding of the Supreme Court in the case before mentioned, State ex rel. v. Hawkins, 44 Ohio St., 98, would require us tc hold, that if the charges upon which the defendant was tried by the mayor, were valid, as alleging facts which, if true, would constitute neglect of duty, that we could not in any way interfere with the judgment or finding of the mayor, for that is final, and the court has no jurisdiction or right to review it.
As will be noticed in this discussion, we have only considered the first of the charges made against the defendant —that relating to the returns of the Street Railway Com *343 pany. The second charge, as to the action of the defendant with regard to the returns of the Gas Company, is'in all respects substantially the same, and the same principles of law apply to that charge also. ■
S. N. Maxwell and John F. Follett, for Pltintiff.
E. W. KUtredge and Wm. M. Ampt, fcr Defendants
The result therefore is that, in our view, the demurrer to the answer of the defendant should be overruled.